Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Caitlin Baunsgard
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 0 1 2023

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 2:21-CR-0164-TOR-3 |
| v. | |
| WILLIAM HUNTINGTON BURNS, | PLEA AGREEMENT |
| Defendant. | |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Caitlin Baunsgard, Assistant United States Attorney for the Eastern District of Washington, and Defendant, WILLIAM HUNTINGTON BURNS ("Defendant"), both individually and by and through Defendant's counsel, Bevan Maxey, agree to the following Plea Agreement:

1.   Guilty Plea and Maximum Statutory Penalties:

Defendant agrees to enter a plea of guilty to Count 4 of the Superseding Indictment filed on September 20, 2022, charging Defendant with Transfer of a Firearm to a Prohibited Person, in violation of 18 U.S.C. §§ 922(d), 924(a)(2), a Class C felony.

Defendant understands that the following potential penalties apply:

PLEA AGREEMENT - 1

      a.    a term of imprisonment of not more than 15 years;

      b.    a term of supervised release of not more than 3 years;

      c.    a fine of up to $250,000; and

      d.    a $100 special penalty assessment

2.    <u>Supervised Release</u>:

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

      a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

      b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

      c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction

3.    <u>Potential Immigration Consequences of Guilty Plea</u>:

If Defendant is not a citizen of the United States, Defendant understands the following:

      a.    pleading guilty in this case may have immigration consequences;

      b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

PLEA AGREEMENT - 2

    c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

    d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

4.    <u>The Court is Not a Party to the Plea Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

    a.    sentencing is a matter solely within the discretion of the Court;

    b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

    f.    the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

5.    <u>Waiver of Constitutional Rights</u>:

Defendant understands that by entering this guilty plea, Defendant is knowingly

PLEA AGREEMENT - 3

and voluntarily waiving certain constitutional rights, including the following:

    a.    the right to a jury trial;

    b.    the right to see, hear and question the witnesses;

    c.    the right to remain silent at trial;

    d.    the right to testify at trial; and

    e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.    Elements of the Offense:

The United States and Defendant agree that in order to convict Defendant of Transfer of a Firearm to a Prohibited Person, in violation of 18 U.S.C. §§ 922(d), 924(a) the United States would have to prove beyond a reasonable doubt the following elements:

> *First*, on about November 5, 2021, in the Eastern District of Washington, Defendant knowingly sold or disposed of a firearm;
> *Second*, Defendant sold or disposed of the firearm to another person, who at that time, had been convicted of a crime punishable by a term of incarceration exceeding one year; and
> *Third*, at the time Defendant sold or disposed of the firearm, Defendant knew or had reasonable cause to believe, that the other person had been convicted of a crime punishable by a term of incarceration exceeding one year.

PLEA AGREEMENT - 4

7. <u>Statement of Facts</u>:

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea. The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

In early November 2021, a Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Confidential Informant ("CI") advised that co-defendant Randy HOLMES (aka "Whispers"), a documented Sureno gang member, was looking to obtain a firearm, as he (HOLMES) planned to conduct strong-arm robberies in the near future. The CI arranged for HOLMES to contact an undercover ATF agent to arrange for HOLMES to purchase a firearm from the undercover ATF agent. On November 5, 2021, HOLMES and the undercover ATF agent agreed to meet at the Motel 6 parking lot in Spokane, Washington.

As scheduled, HOLMES arrived at the Motel 6 driving a Dodge Charger. Co-defendant, Vincent PETRUSHKIN (aka "Vegas"), also a Sureno gang member, was a passenger in the vehicle, along with Defendant, William Huntington BURNS (aka "Serio"), also a Sureno gang member. HOLMES exited the Charger and entered the undercover agent's vehicle. After HOLMES entered the vehicle, he pulled out a firearm, later identified as a Glock Model 17 9mm semi-automatic handgun bearing serial number BHBR218, pointed it at the undercover agent's head, and demanded the firearm the undercover agent was going to sell him. The undercover agent advised HOLMES the firearm was in the back of the undercover agent's vehicle. HOLMES then exited the vehicle and ran around to the back of the vehicle to obtain the firearm. When he did so, the undercover agent exited the vehicle and told HOLMES to drop

PLEA AGREEMENT - 5

the gun. HOLMES then utilized the Glock Model 17 9mm firearm to shoot at the undercover agent multiple times.

Meanwhile, Defendant and PETRUSHKIN fled the area in the Dodge Charger. The Spokane Police Department assisted in the investigation, and Defendant was located nearby. During a post-*Miranda* interview, Defendant appeared nervous and was sweating. Defendant told the officer he met HOLMES at a local convenience store in town and asked for a ride. Defendant advised he did not know the other person in the vehicle (referring to PETRUSHKIN. Defendant advised HOLMES made a stop at the Motel 6 and while in the parking lot, HOLMES exited the grey Dodge Charger they were riding around in to meet with an individual. Defendant stated that gunfire was exchanged and Defendant jumped into the driver's seat of the vehicle and fled with PETRUSHKIN. Defendant advised that he knew HOLMES had just been released from prison.

PETRUSHKIN was also located and provided a post-*Miranda* statement. PETRUSHKIN advised that on November 5, 2021, he and HOLMES were riding around in the Dodge Charger and met an individual who identified himself was "Serio", a known moniker for Defendant, at a local convenience store in Spokane, Washington. HOLMES told "Serio" they were going to go meet someone and HOLMES intended to rob that individual. "Serio" agreed to accompany them. When the three men arrived at the Motel 6 in the Dodge Charger, "Serio" produced a handgun, later identified as the Glock Model 17 9mm handgun and provided it to HOLMES to use a protection during the transaction. PETRUSHKIN asked HOLMES to view the firearm. HOLMES provided the firearm to PETRUSHKIN. Defendant handled and inspected the firearm, and then returned the firearm to HOLMES. HOLMES then exited the vehicle. PETRUSHKIN advised that he heard shots, and then fled the area in the Dodge Charger with "Serio".

PLEA AGREEMENT - 6

The Glock Model 17 9mm handgun and associated expended shell casings were sent to the ATF Laboratory for testing. The Laboratory determined Defendant's DNA was located on one of those expending shell casings.

Defendant stipulates and agrees that he possessed the Glock Model 17 9mm semi-automatic handgun bearing serial number BHBR218 and that on November 5, 2021, he provided that firearm to HOLMES, an individual he knew or had reasonable cause to believe had been convicted of a crime punishable by imprisonment for a term exceeding one year.

8. <u>The United States Agrees Not to File New Charges</u>:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

9. <u>United States Sentencing Guideline Calculations</u>:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations

    a.    *Base Offense Level*:

The United States and Defendant agree to recommend to the Court the Base Offense Level is 12 as Defendant was not a prohibited person when he committed the instant offense. *See* USSG §2K2.1(a)(7).

    b.    *Specific Offense Characteristics*:

The United States and Defendant agree to recommend a 4-level increase as Defendant possessed or transferred the firearm with knowledge, intent, or reason to

PLEA AGREEMENT - 7

believe that it would be used or possessed in connection with another felony offense. *See* USSG §2K2.1(b)(6), n. 14.

The application of this enhancement automatically increases Defendant Base Offense Level to 18. *See* USSG §2K2.1(b)(6).

    c.    *Role Adjustments*:

The United States and Defendant agree to recommend there be no role adjustment. *See* USSG §§ 3B1.1; 3B1.2

    d.    *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a), (b), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.    provides complete and accurate information during the sentencing process; and

    v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

    e.    *Criminal History*:

The United States and Defendant have made no agreement and make no representations as to Defendant's Criminal History Category, which shall be

PLEA AGREEMENT - 8

determined by the Court at sentencing after the Presentence Investigation Report is completed.

      f.    *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

    10.    Length of Incarceration:

The United States agrees to recommend a term of incarceration at the low-end of the advisory guideline range. Defendant is free to recommend any legal sentence.

    11.    Criminal Fine:

The United States and Defendant agree to recommend the Court impose no criminal fine.

    12.    Judicial Forfeiture:

Defendant agrees to voluntarily forfeit any and all right, title and interest he has in the following listed assets in favor of the United States, including, but not limited to:

        a Glock Model 17 9mm semi-automatic handgun bearing serial number BHBR218

Defendant acknowledges that the firearm covered by this Agreement is subject to forfeiture as property facilitating or involved in illegal conduct in violation of 18 U.S.C. §§ 922(d), 924(a)(2), Transfer of a Firearm to a Prohibited Person, and is therefore forfeitable to the United States pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c).

PLEA AGREEMENT - 9

Defendant agrees to take all steps as requested by the United States to pass clear title to the assets to the United States and to testify truthfully in any forfeiture proceeding.

Defendant agrees to hold all law enforcement and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure and forfeiture of any asset(s) covered by this agreement. Defendant consents to the forfeiture and disposal of assets without further notice.

Defendant further agrees to waive all constitutional, equitable and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of the asset(s). Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to the forfeiture.

13. <u>Supervised Release</u>:

The United States and Defendant each agree to recommend 3 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's

person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control; and

b.   Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

14.   Criminal Fine:

The United States and Defendant agree to recommend no criminal fine be imposed. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

15.   Mandatory Special Penalty Assessment:

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

16.   Payments While Incarcerated:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17.   Additional Violations of Law Can Void Agreement:

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

18.   Waiver of Appeal and Collateral Attack Rights:

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

PLEA AGREEMENT - 11

Defendant expressly waives all rights to appeal Defendant's conviction and sentence if the Court imposes a term of imprisonment of not more than the low-end of the advisory guideline sentence. Should the Court impose a term of incarceration above the low-end of the advisory guideline range, Defendant may only appeal the substantive reasonableness of his sentence.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

19.  Compassionate Release:

In consideration for the benefits Defendant is receiving under the terms of this Plea Agreement, Defendant expressly waives Defendant's right to bring any motion for Compassionate Release other than a motion arising from one of the specific bases set forth in this paragraph of this Plea Agreement. The United States retains the right to oppose, on any basis, any motion Defendant files for Compassionate Release.

The only bases on which Defendant may file a motion for Compassionate Release in the Eastern District of Washington are the following:

    a.    *Medical Condition of Defendant*:

        i.    Defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of

PLEA AGREEMENT - 12

     death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia; or

  ii. Defendant is suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which Defendant is not expected to recover.

b. *Age of Defendant*:

  i. Defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process; and has served at least 10 years or 75 percent of Defendant's term of imprisonment, whichever is less; or

  ii. Defendant is at least 70 years old and has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which Defendant is imprisoned.

c. *Family Circumstances*:

  i. The caregiver of Defendant's minor child or children has died or become incapacitated, and Defendant is the only available caregiver for Defendant's minor child or children; or

  ii. Defendant's spouse or registered partner has become incapacitated, and Defendant is the only available caregiver for Defendant's spouse or registered partner.

PLEA AGREEMENT - 13

    d.    *Subsequent Reduction to Mandatory Sentence*:

        i.    Defendant pleaded guilty to an offense which, on the date of Defendant's guilty plea, carried a mandatory minimum sentence; and

        ii.    after the entry of judgment, the length of the mandatory minimum sentence for Defendant's offense of conviction was reduced by a change in the law; and

        iii.    the application of the reduced mandatory minimum sentence would result in Defendant receiving a lower overall sentence.

    e.    *Ineffective Assistance of Counsel*:

        i.    Defendant seeks Compassionate Release based on a claim of ineffective assistance of counsel arising from information that Defendant both

            1.    did not know at the time of Defendant's guilty plea, and

            2.    could not have known, in the exercise of due diligence, at the time the Court imposed sentence.

20.    <u>Withdrawal or Vacatur of Defendant's Plea</u>:

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a.    this Plea Agreement shall become null and void;

    b.    the United States may prosecute Defendant on all available charges;

    c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging

PLEA AGREEMENT - 14

instrument, or were not charged because of this Plea Agreement; and

    d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and defenses Defendant might have to the United States' decision about how to proceed, including a claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

21.    <u>Waiver of Attorney Fees and Costs</u>:

Defendant agrees to waive all rights Defendant may have under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including, without limitation, any charges to be dismissed pursuant to this Plea Agreement or any charges previously dismissed or not brought as a result of this Plea Agreement).

22.    <u>Integration Clause</u>:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

PLEA AGREEMENT - 15

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant

### Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____    3/1/23
Caitlin Baunsgard                 Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement, and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_William Burns_____    3/1/23
WILLIAM HUNTINGTON BURNS          Date
Defendant

I have read the Plea Agreement and have discussed the contents of the Plea Agreement with Defendant. The Plea Agreement accurately and completely sets forth

PLEA AGREEMENT - 16

the entirety of the agreement between the parties. I concur in Defendant's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

_____   _3-1-23_____
Bevan Maxey                        Date
Attorney for the Defendant

PLEA AGREEMENT - 17